# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5008 | DATE | 3/15/2004 |
| CASE TITLE | Limberopoulos v. First Midwest Bank f/k/a Bremen Bank, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff Limberopoulos' Objection to the Bankruptcy Court's Supplemental Proposed Findings of Fact and Conclusions of Law (doc. # 1)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]. Plaintiff Limberopoulos' objections are OVERRULED, and the Bankruptcy Court's recommendations are accepted. Judgment is hereby entered in favor of the Bank with respect to Count I of Limberopoulos' Complaint.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 3/16/04 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| | JHC courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>GUS LIMBEROPOULOS,<br><br>Debtor.<br><br>PETER LIMBEROPOULOS,<br><br>Plaintiff,<br><br>v.<br><br>FIRST MIDWEST BANK, f/k/a Bremen Bank & Trust Co., First Midwest Bank, f/k/a Bremen Bank & Trust Co., not individually but as Trustee under Trust Agreement Number 87-3184, Harry Limberopoulos, Gus Limberopoulos, Louis Siamatas, and Ted Limberopoulos,<br><br>Defendants. | No. 02 C 5008<br><br>Judge William J. Hibbler<br><br>**Appeal from Bankruptcy Adversary Proceeding Judgment in Case No. 00 A 00250** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's, Peter Limberopoulos', objections to the Bankruptcy Court's Supplemental Proposed Findings of Facts and Conclusions of Law ("Supplemental Findings"). For the reasons set forth below, Limberopoulos' objections are overruled, and the Bankruptcy Court's recommendations are accepted.

I. **BACKGROUND**

On January 3, 2001, the Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law. On May 21, 2002, the District Court adopted those findings and conclusions



except with regard to Count I of Limberopoulos' complaint, in which he claimed that First Midwest Bank f/k/a Bremen Bank ("Bank") violated the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA"). The District Court directed the Bankruptcy Court to make findings of fact with respect to the materiality of the alleged concealment under the ICFA.

Limberopoulos obtained a loan from the Bank in 1988. The evidence at trial established that all but three of Limberopouolos' tendered payments to the Bank were properly credited against the loan. These three payments were made on April 10, 1992; December 7, 1992; and January 11, 1993. The Bank accepted these three payments without objection or comment and acknowledged receipt of the payment and the loan number for which the payments were intended. The Bank, however, failed to apply these payments to reduce the loan balance. For the April 10, 1992, and the January 11, 1993 payments, the Bank applied them to the loan upon its receipt of the payments, but the Bank subsequently mistakenly reversed these applications. The Bank did not inform Liberopoulos of its failure to apply the payments at the time of payment or thereafter.

On June 20, 2002, the Bankruptcy Court issued its Supplemental Findings, recommending that judgment be entered in favor of the Bank with respect to Count I of the complaint.

## II. STANDARD OF REVIEW

In non-core proceedings (i.e., cases that are not directly related to matters arising under Title 11), a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). The district court then conducts a *de novo* review of any portion of the bankruptcy judge's proposed findings of fact and conclusions of law to which a party has made a specific written objection. 28 U.S.C. § 157(c)(1); Fed. R. Bank. Proc. 9033(d). The district court may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further

evidence, or recommit the matter to the bankruptcy judge with instructions. Fed. R. Bank. Proc. 9033(d). Accordingly, the Court will conduct a *de novo* review of the record to resolve Limberopoulos' objections.

## III. DISCUSSION

### A. Illinois Consumer Fraud Act

To establish a violation of the ICFA, the plaintiff must demonstrate that: (1) the defendant performed a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 501, 675 N.E.2d 584, 593 (1997). Although the policy of the ICFA is to give broad protection to the consumer, *Siegel v. Levy Organization Dev. Co.*, 153 Ill.2d 534, 541-42, 607 N.E.2d 194, 198 (1992), a plaintiff must still demonstrate deception by the defendant because the ICFA prohibits deception, not error. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 23, 653 N.E.2d 968, 977 (Ill. App. 2 Dist. 1995); *Stern v. Norwest Mortgage, Inc.*, 284 Ill. App. 3d 506, 513, 672 N.E.2d 296, 302-03 (Ill. App. 1 Dist. 1996). The Illinois Supreme Court has held that an omission of a material fact or a material misrepresentation constitutes a deceptive act. *Connick*, 174 Ill.2d at 504-05; 675 N.E.2d at 595. An omission is material if the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act. *Id.*

The ICFA does not mandate that the defendant have deliberately intended to deceive the plaintiff, so long as the misrepresentation or omission was intended to induce the plaintiff's reliance. *Cripe v. Leiter*, 184 Ill.2d 185, 191, 703 N.E.2d 100, 103 (1998); *Mackinac v. Arcadia*

3

*Nat'l Life Ins. Co.*, 271 Ill. App. 3d 138, 141-42, 648 N.E.2d 237, 239-40 (1995). When considering whether the element of reliance is met, good or bad faith is not important, and an innocent misrepresentation or omission may be actionable. *Siegel*, 153 Ill.2d at 542, 607 N.E.2d at 198. A party is considered to intend the necessary consequences of his own acts or conduct. *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 750, 652 N.E.2d 1351, 1357 (Ill. App. 1 Dist. 1995). Actual reliance is not required. *Siegel*, 153 Ill.2d at 542, 607 N.E.2d at 198.

### B. Deceptive Act or Practice

Limberopoulos attempts to establish a deceptive act by proving that the Bank did not disclose its failure to apply three payments made on Limberopoulos' loan. The Bankruptcy Court held that the Bank did not commit a deceptive practice under the ICFA because the Bank's failure to disclose its incorrect applications of the loan payments was not material. The Bankruptcy Court reasoned that even if the Bank had disclosed its incorrect application of the loan payments, Limberopoulos would not have acted differently. Supplemental Findings at 3. The Bankruptcy Court held that an earlier disclosure would only have resulted in an earlier demand that the payments be properly applied. *Id.*

As explained above, an omission is material if the plaintiff would have acted differently had he been aware of it, or if it concerned the type of information upon which he would be expected to rely in making his decision to act. *Connick*, 174 Ill.2d at 504-05; 675 N.E.2d at 595. At least two courts in this district have held that this test for materiality is an objective one: whether a reasonable person could be expected to rely on the information. *See, e.g., Tylka v. Gerber Prod.s Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998); *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938 (N.D. Ill. 1997). Limberopoulos claims that the Bankruptcy Court erroneously considered his

4

personal circumstances in deciding that he would not have acted differently had he been aware of the failure to apply the payments. Limberopoulos argues that a reasonable person would have acted differently had it known that the Bank would not apply the payments to the loan because "[i]t is difficult to imagine that a customer would continue to do business with a bank that did not apply loan payments." In addition, Limberopoulos argues that the Bankruptcy Court improperly failed to consider the effect of the omissions, the non-disclosure of the failure to apply payments to the loan, at the time Limberopoulos tendered the payments, instead considering only the effect of the omissions after they occurred.

This Court agrees with the Bankruptcy Court that the Bank's omissions were not material. First, there is no question that Limberopoulos owed all the funds it tendered to the Bank pursuant to the forbearance agreement of April 8, 1992, between Limberopoulos and the Bank. Second, there is no dispute that Limberopoulos desired to make the payments to reduce the outstanding balance on the loan and to avoid a threatened mortgage sale. Third, Limberopoulos provides no citation to the record to support its contention that the Bank, at the time it received the payments, was not going to apply them to the commercial loan. In fact, the evidence shows otherwise as the Bank applied the April 10 and January 11 payments to the commercial loan upon receipt. The Bank later mistakenly reversed this application. The Bank's initial application of these payments to the loan precludes the Court from considering whether a reasonable person would have acted differently upon knowing of the failure to apply the payments to the loans at the time the payments were made, because these payments *were* applied to the loan at the time they were made.

Fourth, Limberopoulos misconstrues the "reasonable person" standard. Although the Court could not find an ICFA case defining the reasonable person standard, in other Illinois claims, the

5

standard for reasonableness is measured by what a reasonable person would do *under circumstances similar* to those presented. *See, e.g., Hobart v. Shin*, 185 Ill.2d 283, 294, 705 N.E.2d 907, 913 (1998); *Miller v. Civil Constructors, Inc.*, 272 Ill. App. 3d 263, 269, 651 N.E.2d 239, 244, (Ill. App. 2d Dist. 1995). Thus, the Bankruptcy Court did not err in considering that: (1) the evidence showed that during the course of the loan from 1988 through 1993, the Bank properly applied every payment upon receipt with the only exception being the December 7, 1992 payment; (2) there was a substantial balance left on the loan even after all of the payments had been made; and (3) the Bank had a continuing right to accrue interest on the correct balance of the loan and to exercise its foreclosure rights. Although the Bank's consideration of Limberopoulos' status as a sophisticated business man who kept records of the amounts owing on his loans ventures into the subjective realm of the loan transaction, this Court finds that the Bankruptcy Court's decision that the Bank's omission was not material to a reasonable person is sufficiently supported by the other circumstances considered by the Bankruptcy Court.

Contrary to Limberopoulos' claims, it is not so difficult to imagine that a customer in his position would continue to do business with the Bank, even if the Bank had disclosed the failure to apply the payments when the failure to apply occurred. As the Bankruptcy Court explained, the Bank had properly applied the vast majority of the loan payments to the loan. In addition, there was still a substantial balance left on the loan even after the payments were applied to the loan. Limberopoulos does not cite any legal or factual case supporting his theory that a person in that situation would go through the trouble of refinancing their loan through another bank instead of merely demanding proper application of the payments to the loan.

## C. Intent to Induce Reliance on the Deception

The Bankruptcy Court also held, alternatively, that even if the Bank did commit a deceptive act or practice, there was no evidence presented that the Bank intended Limberopoulos to rely on the Bank's failure to disclose the incorrect application of payments. Limberopoulos, however, contends that the Bank indeed intended him to rely on the Bank's omissions so that he would continue to make payments and not seek to refinance the loan through another bank. Limberopoulos contends that the Bank's failure to inform him that it would not apply his payments to the loan would have the "natural" consequence that Limberopoulos would continue to tender payments to the Bank.

Limberopoulos, however, gets the test wrong. Limberopoulos' continued payments must be a "necessary" consequence of the Bank's omission of its failure to apply the loan payments in order to prove that the Bank intended Limberopoulos to rely on its omission. *Dwyer*, 273 Ill. App. 3d at 750, 652 N.E.2d at 1357. The Bank did not have a strong incentive to keep its three mistakes a secret as American Express did in *Dwyer*, and the sole purpose of applying payments to a loan is not to continue to receive payments as in *Warren v. LeMay*, 142 Ill. App .3d 550,566, 491 N.E.2d 464, 474 (Ill. App. 5 Dist. 1986). Rather, Limberopoulos' payment was a necessary consequence of the agreement between the Bank and Limberopoulos that set forth Limberopoulos' terms of payment. In the Bank's desire to maintain customers and to keep payments coming, the Bank would have a strong *dis*incentive to hide a failure to apply payments. The Bank's incentive would be to rectify its mistake as soon as possible and apply the payment to the loan.

Furthermore, the Bank did not know at the time it received the three payments that it was not going to apply the payments to reduce the loan balance, and thus it could not have intended

7

Limberopoulos to rely on that. In addition, as explained above, Limberopoulos continued to owe a great deal of money on the loan, which he was required to pay to the Bank pursuant to a binding agreement between them. Therefore, the Bank did not need the omission to induce Limberopoulos to make payments. Finally, Limberopoulos also cannot show that the Bank intended him to rely on the Bank's omission at the time of payment because the Bank did originally apply the April 10 and January 11 payments to the commercial loan upon receipt.

## IV. CONCLUSION

Limberopoulos' objections are overruled, and the Bankruptcy Court's recommendations are accepted. Judgment is hereby entered in favor of the Bank with respect to Count I of Limberopoulos' complaint.

IT IS SO ORDERED.

3/15/04
Dated

The Honorable William J. Hibbler
United States District Court